**In re PHILADELPHIA RAPID TRANSIT CO.***

No. 17980.

District Court, E. D. Pennsylvania.

Sept. 19, 1934.

S. Davis Wilson, Joseph Sharfsin, and L. Stauffer Oliver, all of Philadelphia, Pa., for petitioners-creditors.

Allen Hunter White, Frederic L. Ballard (of Ballard, Spahr, Andrews & Ingersoll), and George Wharton Pepper, all of Philadelphia, Pa., for Philadelphia Rapid Transit Co.

Before DICKINSON, KIRKPATRICK, and WELSH, District Judges.

DICKINSON, District Judge.

At the first argument leave was granted to file supplementary paper books. These were filed and the cause ripe for a ruling. The cause was then set down for a reargument in order that it might be heard by a full bench. Further leave was given to file additional briefs. These we now have. We appreciate the help given us by the notably able arguments submitted.

### The Question Presented.

The cause is before us on a creditors' petition under section 77B, amendment to the

*Decree affirmed 73 F.(2d) 1022.

Bankruptcy Act (11 USCA § 207). The "debtor" has made answer and has likewise filed a motion to dismiss. The question is whether (1) the petition complies with section 77B, and (2) "has been filed in good faith." If the answer to both questions is in the affirmative, an order approving the petition is to be entered. If either is answered in the negative, the petition is to be dismissed.

### The Procedure.

This legislation is too recent for the court to have formulated any rules of practice under it. The instant case, however, affects interests of such importance that it was directed to be submitted to the full bench rather than to a single judge. As one member of the court was unavoidably absent, the cause was set down for reargument.

We note that the record shows a motion on behalf of other parties to intervene, and that this was down for a hearing at the argument on July 11th. Our attention, however, was not called to this motion nor was anything said about it at the argument. Doubtless this was because Judge Welsh had previously disposed of a similar motion. We in consequence treat the motion to intervene as not pressed and as abandoned. For this reason, we do not discuss it.

We would not dwell upon the procedural features of the case except for the emphasis given some of them at the argument. Resort is often had to analogies, whether helpful or not. Here there is a formal motion to dismiss. This suggests the analogue of a demurrer, and again the rule that well pleaded averments are to be accepted as verities. The settled rule in bankruptcy cases is that, on a motion to dismiss a petition, the question is not whether a fact averment is true but whether it has been pleaded. For this is cited, among other cases, North Ward Radio Co. v. Grigsby Grunow Co. (C. C. A.) 67 F.(2d) 745.

So far as the formal fact averments of a petition go, it may be admitted that the cited doctrine applies. No pleader, as such, is bound to be frank nor (unless an affidavit is required) to be even truthful. All that is required of him is that he follow the rules of legal logic. This, however, only applies to the formalities of pleading. It must not be forgotten that this proceeding is unique. In the ordinary bankruptcy petition, all which is called for are certain fact averments. Section 77B petition requires more. What is called for are not merely formal fact averments, but the petition must be "in good faith." Of this, the judges to whom it is pre-

sented must be "satisfied." Obviously, the burden of so satisfying them is upon the petitioner or petitioners. They may be so "satisfied" upon the mere perusal of a debtor's petition or of a creditor's petition and the answer thereto or they may not. The judgment reached is a summary judgment. They may seek light through their own methods. They may decide it upon the face of the pleadings or upon arguments or upon hearing as they may prefer. What transpires upon any motion day in the bankruptcy court will make clear what Congress had in mind. There must, of course, be jurisdiction of the parties. On a debtor's petition, this the court gets by submission. On a creditor's petition, process issues in the form of an order on the "debtor." It appears by answer. The question of approval then arises. It may be presented through a motion of the petitioners to approve or a motion of the "debtor" to dismiss. If both or neither move, the question is none the less presented. There must be an order either of approval or dismissal. The judgment, as we have said, is a summary one. There is no need to await the leisurely processes of legal forms of inquiry nor do the technical rules of pleadings control. The judgment is one of sound discretion, having in mind its dual character. The petition must (1) conform to the formal requirements of the act; (2) the judge must be "satisfied" it is "filed in good faith." The first calls for a judicial judgment. The second is an appeal to judicial discretion. The final question is really one. Should the petition be approved? A refusal to approve is a dismissal. So much for the procedural features. The controlling fact feature is not in controversy.

### The Fact Situation.

The history of the P. R. T., by which initials we shall designate the respondent, as it is presented does not make pleasant reading. It is the history of a public service corporation, which has come to have a monopoly of the local transportation system of a great city. It is a history of the exploitation of great and valuable public franchises by selfish financial interests; of the luring to their loss of people of moderate means, and especially of the employees of the system, to invest in its capital stock and the infliction upon the public of high transportation charges, and all other evils which always follow the creation of a great and powerful monopoly.

We have said that employees were lured into investing in its stock. They were partly lured and partly coerced. The real purpose was to use them in a struggle between equally

selfish interests for control in the management of the system. That control has been attended all the way by the most ruthless exploitation of stockholders, the city, and the traveling public alike. The city, by devious methods, was drawn into partnership with the managers of the system upon such terms that the burden of debt incurred by the worse than mismanagement of the system fell upon the city, with little and indeed no hope of its ever being able to extricate itself. All income above what was absolutely necessary to operate the system was diverted to the pockets of its managers. Indeed, to increase the latter, operating expenses were met by the incurring of fresh loans. There is small wonder that an insistent demand for some form of relief culminated in a proceeding in the state court, and the placing of the management of the corporation, in part at least, in the hands of directors in part named by the court. This has been followed by the present petition. This perhaps rather lurid picture of present conditions bears upon the need of amendment. The question before us is a narrower one. Is this petition in good faith in the sense of a real creditors' petition?

### Discussion.

A few very general observations will supply us with a guide to what disposition should be made of the pending motions.

■ The genesis of this amendment to the Bankruptcy Act is well known. We have always had with us debtors whom it would be a harsh judgment to call insolvent and yet who are in such financial straits as to be in need of a moratorium. To leave them to the rude methods of common-law debt collections would mean financial death to them and, because of the frightful waste which accompanies these methods, loss to creditors as well. More than this, creditors were forced by self-interest into a race to be first in at the death. Many a debtor was thus pushed into insolvency which might have been averted. Many expedients were resorted to for the purpose of dealing with such situations. One was a composition agreement; another an assignment for the benefit of creditors. The one was dependent upon agreement; the other did not fully serve because it provided only a method of liquidation. Resort was then had to an equity receivership. Equity has taken jurisdiction in cases of corporations charged with a public duty. When such a corporation was unable to perform its public functions, it could do so through a receivership. Receivership bills were then filed against private corporations. Such bills were not sanctioned by any principles of equitable jurisdiction, but the practice was so convenient and useful that the courts tolerated it when there was a confessing answer. The weak feature was that a composition or reorganization could be affected only by agreement. Then came attempts to force objecting creditors or stockholders to submit to the judgment of creditors who approved. These under the final rulings of the courts proved abortive. The desired objective could be reached only through a bankruptcy law. Hence we have the sections 74, 75, and 77B amendments (11 USCA §§ 202, 203, 207). The business depression through which we hope to pass and which we have in part passed, deepened the demand for relief. This history of what led up to 77B clearly discloses the policy of Congress. It was to afford a respite to corporations in financial difficulties so that their owners and creditors might have time to effect a rescue. It was not to force them upon the financial rocks and make of them utter wrecks. Hence we find the initiative is given primarily to the debtor. It is permitted to retain control and given authority to conduct its business as before. This is of necessity made subject to the power of its creditors to force liquidation who further may, if there is occasion for it, initiate such proceeding themselves. Any remedy may be best applied in the light of the evil which it was given to avert. The evil was that without section 77B, one or a few creditors, either because of a mistaken judgment or from the selfish motive of forcing payment of their claims, might halt a plan of adjustment of all claims of which all the other creditors approved. When the final plan comes to be submitted, the considerations which control its acceptance or rejection are manifest. That is to be done which the true interests of all command. The same considerations control the approval or dismissal of an adverse petition. The affairs of no large corporation, and more especially one whose management affects the public, can be conducted without criticism. The wisdom of the management is bound to be questioned. Those can easily be found who are ready with a plan of reorganization and new management to relieve any corporation of all its woes, experienced or threatened. Success will take the place of failure, and employees, creditors, stockholders, and the general public reap a common benefit. The most abundant crop on earth is the crop of infallible expedients for relief of economic distress. Panaceas and specific

remedies are offered beyond numbering, but the patient may not survive. Congress, in consequence, by section 77B, has given a remedy which can· be invoked only by the debtor or creditors. The P. R. T. is no exception to this general rule. Its affairs are and have been in a most unsatisfactory condition. Some way must be found to extricate the corporation and its subsidiaries, and above all the city and general public from the difficulties which have been created. The petitioners have such a plan. They believe in its merits. To put it in operation there must be a change in management, its policies, and personnel. They have resorted to section 77B as a means of accomplishing their purpose. Our task is to determine whether it is legally available to them. The petition must be by at least three creditors. It is easy for any three persons to acquire the status of creditors so as to meet this requirement. The petitioners have done this but this is not enough. The petition must be "in good faith."

It may be no light matter to sanction a proceeding which is bound to disrupt the relations of the corporation with all with whom it does business. This does not mean to question the purity of the motives of the critics of the management. Nor does it mean that the criticism is baseless. No one could be found to say in the instant case that criticism of the way in which the affairs of the P. R. T. have been managed, is unjustified. The fact that a responsible officer in the city government, one whose special duty it is to guard its interests, shares in such criticisms, is of significance and well worthy of due consideration.

■ The comment we have made is directed to the meaning of section 77B. We think it means that the proceeding provided is to be invoked either by the corporation concerned or by its creditors. This is the meaning of the "good faith" phrase used in the act. It does not, as we have said, refer to the purity of the motives of the petitioners, nor, on the other hand, does it mean that the petitioners have merely technically qualified as creditors. They must be found to be speaking for the corporation or ·as creditors.

■ Applying this test in the instant case, we have two questions to answer. Is the pending petition sanctioned by the officials who represent and speak for the· corporation? . There is no pretense of this. Do the petitioning creditors speak as creditors? The answer to this question must likewise be in the negative. Of course, it may be said that the answer to this second question is made without the light of what may be developed by the evidence which may be introduced. This is true. The duty of so answering it is, however, imposed upon the court. The approval of an adverse petition may, as we have said, do irreparable injury to the corporation and its creditors. The subsequent dismissal of the petition will not repair the damage done. A petition not "in good faith," as we have defined that phrase, must be dismissed, and the proceeding halted before it gets under way. This is not a creditors' petition.

■ We see in it no more than a well intentioned attempt to create a new management of the P. R. T. corporation and to effect a reorganization which will bring its affairs out of the chaos which now exists. All that we now rule is that, however desirable such an end may be, section 77B confers jurisdiction upon this court only upon the initiative of the corporation or by a petition of its creditors. The amendments to the Bankruptcy Acts are primarily for the benefit of distressed debtors and section 77B (11 USCA § 207) extends to corporations the rights which section 74 (11 USCA § 202) gave to individual debtors. The added right given to creditors to invoke the provisions of the act does not mean that any three persons, merely because they have the technical status of creditors, may force a corporation into reorganization or liquidation. "Good faith" means, as we have said, a real creditors' petition, not merely a petition signed by three persons who have the technical status of creditors.

■ This is an inadequate expression of the thought in mind. It is this. Stockholders of a corporation might think it in need of reorganization. They might file a petition under section 77B. It would be dismissed because it was not a. creditors' petition. They could not, by purchasing claims against the corporation, thus becoming creditors, make of their petition a creditors' petition "in good faith." Congress has given to creditors the right to petition. It was necessary to provide for signers. Congress doubtless, by analogy to bankruptcy proceedings, required three. We do not rule that more are required or that they must be acting for or representing others. A double duty is, however, imposed upon the judge. Compliance with certain formalities are required by the act. These the judge must find have been observed. One is that the petition ·must be signed by three creditors. There· has been a compliance with

the formalities. The act, however, requires more of the "judge" than a certification to such compliance. He must find "good faith." This is more than a formality. It goes to the very vitals of the petition. If it is not a real creditors' petition, although it may be signed by three persons who have the technical status of creditors, it is not "in good faith" a creditors' petition. No better illustration could be found of the distinction attempted to be expressed than is afforded by this very petition. An official of the city, whose special duty it is to supervise its fiscal affairs, finds the city to be in what is really a partnership with a corporation whose activities deeply affect the city and its people. He has made himself as familiar as any one can be with its affairs and its management. He is filled with a deep distrust of that management. This feeling has extended to the directors who, at his instance, were put by the state court in control of its affairs. He is convinced that the corporation is headed for the financial rocks and fears that the city may be drawn into its wake. He believes that both can be saved, but only by a complete change of management and a reorganization. He has conceived a plan of reorganization through which the much desired result may be achieved. He sees in section 77B the needed means. He appreciates, as do his counsel, that the powers of the court given by section 77B can be invoked only by the corporation or by its creditors. The co-operation of the company he knows cannot be secured. Resort must in consequence be had to a creditors' petition. Three real creditors could doubtless have been found to sign such petition. This would, however, not serve his real purpose. That purpose could be served only by his being in absolute control of the proceedings. Hence he and two others chosen by him and upon whose fidelity he could rely bought $7,000 of the bonds of the corporation. There has been as yet no default on these bonds. Their maturity date is far in the future. The mistake made was in assuming that, if he complied with all the formalities required by the act of Congress, he could bring himself within its provisions. He has overlooked the second requirement of substance that the petition must be "in good faith" a creditors' petition. He has further assumed, as his counsel have argued, that the averments of the petition must be taken as verities until the facts have been judicially determined in accordance with the leisurely methods of legal procedure. He again has overlooked the requirement that the "judge" must summarily determine the fact of compliance with the formalities and likewise the fact of "good faith."

The very great efforts and the meticulous care with which the petitioners have sought to comply with the formal requirements of the act make clear that the petition is not a creditors' petition within the meaning of the act. This is manifest. Any one might find the purposes of the petitioners to be of the best and their motives the purest. To find, however, that the purpose and motive was to safeguard their claims as creditors would be impossible. The only claims they have are not presently payable and will not be until 1962. The debts are not due for a generation to come. The fact that two of them have waived the security they hold is proof that they are not concerned over the payment of the debt due them. The real purpose and motive behind the position existed before they became creditors and they became creditors solely as an aid in the accomplishment of this purpose. This was frankly admitted in the argument at bar. They bought their way in as creditors and presumedly can sell their way out.

The petition is not in truth a real creditors' petition and in this sense is not in good faith. Approval should in consequence be denied.

A formal order may be submitted.

KIRKPATRICK, District Judge, concurs.

WELSH, District Judge (dissenting).

I regret that I cannot concur in the opinion of my colleagues in the case. But I wish to thank them for their assistance and co-operation in a case of such magnitude. I felt that the cause was of such a nature that instead of being passed upon by a single judge, it warranted the attention and consideration of the entire court. In filing this dissenting opinion, therefore, I am doing so because I feel that the purpose of the Congress in passing section 77B (11 USCA § 207) is being frustrated and that grave consequences may follow in the future if the course herein adopted is to be a precedent for our guidance in such matters arising under this salutary legislation.

There is no question that in this case the petitioner has complied with all the technical requirements of the section in question. The only question for the determination by the court is the one of "good faith" within the meaning of the section. The act provides

that if the judge is convinced of the existence of "good faith," he shall approve. To this extent I agree with the conclusion of my colleagues. But to my mind there is a wide distinction between the affirmative and the negative viewpoints as to what constitutes good faith. If the judge holds or finds in the affirmative that "good faith" does exist, it is clear that no hearing or taking of testimony is necessary. But before a judge can decide the question of "good faith" in the negative and find or hold that "bad faith" exists, proof should be required and permitted. I feel that it would be contrary to the act for the judge to decide that "bad faith" existed without giving the petitioning creditor an opportunity to prove his allegations. For the court to do so would be to decide such an important phase of the case without any evidence at all and later, perhaps, make it possible for the company to present a debtor petition thereby enabling them to clamp down the lid on the whole matter and only present such information and raise such issues as for their own peculiar reasons best suited them.

This entire legislation was passed by the Congress for the reorganization of our financial and industrial structure, without which we cannot hope to reach complete industrial and financial recovery. Inflation required deflation. This legislation permits deflation on a major scale throughout the United States. Deflation by debtors when they desire to make use of it and by creditors when the debtor fails to act. And while the legislation takes the form of an amendment to the Bankruptcy Act, my feeling is that it permits us to do under the form of bankruptcy what we cannot now do in equity. But its purpose is equitable. The wording of the act, the duties, responsibilities, and absolute powers conferred by the statute are all in conformity with the plenary powers reposed in a chancellor. There is nothing savoring of or analogous to the bankruptcy statutes in the section and I feel that to interpret it as a bankruptcy statute and to attach to proceedings under it the atmosphere of a bankruptcy statute is contrary to the purpose of the Congress. In construing it, as in this case, the court should look to the whole purpose behind the procedure as well as to the technical features involved. "Good faith" or "bad faith" in the actual, real, equitable sense should be our guide. The minds who brought this legislation into being had a clear conception of the magnitude of the problem to be solved. They put this matter squarely up to the judges of the federal District Courts.

I believe that in doing so they did it with the thought that it would be applied along broad and comprehensive lines and not in strict conformity with either the letter or the spirit of the then existing bankruptcy laws with all their inadequacy to meet the big situation that now confronts the country.

What of the situation that now confronts us in the case before us? I agree with my colleagues as to the conclusions they have expressed concerning the malodorous past of the P. R. T. But the interrelations of underliers, finance, and politics that permeate the whole problem constitute such a stranglehold on the equities involved that it cannot be broken by any local or state court. Without section 77B (11 USCA § 207), the public, the city, the stockholders, and employees are powerless to work out a comprehensive plan on a basis of equity to all. The city controller, having charge of the accounts of the city of Philadelphia, which is a partner of the P. R. T., is the petitioner in this case. As controller, he has a sworn duty to perform in a case such as this. He has told the court that he is acting in his official capacity and not in his individual capacity and frankly admits that he obtained the necessary bonds in order to comply with the provisions of the act of Congress. The city solicitor has no authority to speak for the city controller in the performance of his official duty without his authorization or consent. For many years he has been most familiar with the transit situation and has actively participated in all major matters incident thereto. His "good faith" from a moral and practical standpoint has been established by his course of conduct in the past and for which, as a public officer, he has received many commendations. He has qualified as a petitioner under the act. Associated with him are two other persons, equally technically qualified. I cannot, therefore, hold that we would be justified in summarily ejecting him from this case. The public and private interests are so vast that something of real equity, or the presence of "bad morals" should be present to warrant the court in so doing. A mere technicality, or a mere whimsical conclusion of counsel for defendants, not based on evidence, is not sufficient.

It must also be borne in mind that there were creditors who desired to intervene. At the hearing over which I presided on June 29, 1934, I refused to permit such persons to intervene as plaintiffs. Counsel for the P. R. T. strenuously opposed such intervention and one of the reasons put forth by him was

that it would open the door to a multitude of plaintiffs and lead to confusion. Counsel for petitioner expressed similar views. The right to intervene as plaintiffs was denied, but it was expressly stated from the bench that later such creditors would have an opportunity to be present and be heard for or against any reorganization plans or proposals. This is stated to show that there is probably a very real objection on the part of dissatisfied creditors of the P. R. T. Just how strong this objection is should be inquired into and be a matter of proof. It does not seem to be fair and equitable to permit counsel for P. R. T. at one hearing to object to intervening creditors as plaintiffs and at a subsequent hearing to allege bad faith because there are only three on the petition.

Undoubtedly, under this statute (section 77B) we will be confronted with voters' pools, voters' trusts, and various other devices to show that on the face of things the petitioners constitute a more noisy minority—devices often conceived and brought into being with the idea of stifling criticism or objections to the plans of those who seek to manipulate or control corporate policy and destiny. But now that this whole matter is before the federal court for determination and all the facts can be brought to light, I feel that in keeping with the spirit of the amendatory statute this should be done and under no circumstances should a judge or a court resolve against good faith on the part of a creditor-petitioner in advance of a hearing and the taking of testimony. This is especially true in view of the fact that a denying answer was filed to the bill on June 30, 1934, and two days later a motion to dismiss was filed by defendants. The bill and answer set up important disputed facts.

(1) Insolvency, in that the debtor is unable to meet its obligations as they mature; (2) that the debtor has committed acts of bankruptcy with intent to hinder and defraud its creditors, and wrongfully transferring certain of its property to persons and corporations named; (3) irregular and harmful acts in connection with the acquisition of Yellow Cab Company; (4) waste of the company's assets in the amount of approximately $4,000,000, and to the extent of $120,000 within the last four months; (5) loss by the operation of certain bus lines of more than $3,000,000; (6) improper use of depreciation funds to meet its funded debt; (7) that the company will be unable to pay off maturing bond issues and other matters of a grave and serious nature.

If the petitioning creditors should substantiate these facts by evidence, then, and not until then would the question of "good faith" arise. The question of "good faith" should not be disposed of without the taking of testimony.

For these reasons, I respectfully dissent from the opinion filed by my esteemed colleagues on this case.