### PLATT v. SCHMITT (two cases).
### Nos. 10714, 10733.

Circuit Court of Appeals, Eighth Circuit.
Jan. 21, 1937.

James S. McClellan, of St. Louis, Mo. (Jacob Chasnoff, George C. Willson, and Hugo Monnig, Jr., all of St. Louis, Mo., on the brief), for appellant.

C. L. de Renthel, of St. Louis, Mo., for appellee.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

## WOODROUGH, Circuit Judge.

On appeal from an order denying dismissal of petition under section 74 of the Bankruptcy Act, as amended (11 U.S.C.A. § 202), Raymond Schmitt, administrator of the estate of Fred Schmitt, Jr., deceased, substituted as appellee in place of Fred Schmitt, Jr., deceased (11 U.S.C.A. § 202a).

On July 1, 1935, Fred Schmitt, Jr., since deceased, filed a petition under section 74 of the Bankruptcy Act, as amended (11 U.S.C.A. § 202), as a debtor, alleging that he was insolvent and desired to effect a composition or extension of time to pay his debts, and on the same day such petition was approved by the trial court. The debtor, at the same time, filed an application for a restraining order setting out that the Joyner Realty Company had, on September 15, 1925, executed a certain deed of trust conveying to Edward G. Platt, as trustee, certain real estate known as the Gotham Apartments in St. Louis, Mo.; that the debtor, as owner of the property, had been unable to meet the requirements of the notes secured by the deed of trust; that the fair and reasonable value of the property was in excess of all incumbrances; and that the debtor had a substantial equity in the same, and praying that the trustee be restrained from advertising and selling the property to satisfy the indebtedness. The restraining order was thereupon issued as prayed and the matter was referred to the referee in bankruptcy for further proceedings.

Thereafter, on August 1, 1935, the trustee named in the deed of trust moved to dismiss the debtor's petition and to dissolve, the restraining order. He alleged that he had taken possession of the property covered by the deed of trust by reason of default in performance on January 15, 1933, and had been operating the property for the bondholders since that date; that foreclosure proceedings had been instituted in the state circuit court and that on June 17, 1935, the judge of such court before whom the proceedings were had, signified his intention to enter a judgment in favor of the trustee decreeing foreclosure of the lien of the deed of trust; and that before said decree was entered the debtor had filed the petition in the federal District Court. It was also alleged in the motion to dismiss that the debtor acquired title to the property in question by deed dated June 8, 1933, which was subsequent to the date of the enactment of section 74 of the Bankruptcy Act; that in acquiring the property the debtor assumed no part of the mortgage indebtedness represented by the outstanding bonds, the only consideration for the transfer of the property to the debtor being the sum of $1; that the debtor had, therefore, no substantial interest in the mortgaged property; and that the debtor's petition was filed for the purpose of unfairly hindering and delaying the trustee in the enforcement of the provisions of the deed of trust, wholly contrary to the spirit and purpose of section 74 of the Bankruptcy Act. The motion was referred to the referee in bankruptcy who heard the testimony upon the issues and filed his report recommending that the motion to vacate the restraining order and to dismiss the proceeding be denied. The trustee filed exceptions to the report of the referee and the trial court overruled the exceptions, approved the report of the referee, and denied the motion to dismiss. From such order the trustee prosecutes this appeal.

It appears from the report of the referee, sustained by the testimony in the record, that in 1925 the Joyner Realty Company owned a parcel of ground with an apartment building thereon located at 5904 Enright avenue in St. Louis, Mo.,

and that at that time there were two mortgages on the property—one a first mortgage deed of trust dated September 15, 1925, securing bonds in the sum of $225,-000 principal issued by the Joyner Realty Company; and a second mortgage in the principal sum of $85,000; that in August, 1927, the Joyner Realty Company sold the property, subject to the two mortgages, to Fred Schmitt, Sr. (father of the debtor herein), a St. Louis building contractor, for $62,000, $32,000 of which was paid in cash and the balance of $30,000 was represented by cancellation of a debt owing by the Joyner Realty Company to Mr. Schmitt. At the time of the conveyance to Mr. Schmitt, Sr., the amount unpaid and owing on the second mortgage totalled some $70,000. During the period from August, 1927, to January 15, 1932 (the date on which the trustee in the first mortgage took possession of the property), Mr. Schmitt, Sr., by application of the rental income from the property and his own cash resources, paid off the balance remaining on the second mortgage; paid the interest accruing during that time on the bond issue, and reduced the principal of the bonds from $225,000 to $156,000, and that Mr. Schmitt, Sr., invested in the property some $152,000 over and above the rental income derived from it.

However, the taxes for the years 1930 and 1931 were not paid and the 1932 taxes became delinquent on January 15, 1933, and it was in consequence of that delinquency that the trustee took possession of the property and has continued the operation of it since that date for the benefit of the bondholders. The testimony before the referee was conflicting as to whether or not the trustee took possession of the property without notice to Mr. Schmitt, Sr. The evidence, however, reflects the operation of the property by the trustee and his disbursements during his stewardship of the property.

In June, 1933, Mr. Schmitt, Sr., by deed signed and acknowledged by him and his wife, conveyed this property to his son, Fred Schmitt, Jr., the debtor in these proceedings. Although the deed recited a consideration of $100, the testimony was that only $1 actually passed from the son to the father, and the referee found from the evidence that the conveyance was, in fact, without consideration other than love and affection arising from the relation of father and son. The son testified that by virtue of the deed he was the absolute owner of the property, subject to the mortgage in question, and "does not have to account to anybody for any interest in it (the property)."

Mr. Schmitt, Sr., testified that the reason he conveyed this property to his son was that he was not feeling so well at that time and thought that, if anything happened to him, his son would have the property and, if the son could realize anything from it, he could give financial assistance to the other members of the family. Mr. Schmitt, Sr., testified further, on cross-examination, that he "did not make the conveyance so that (his) son could apply to the United States Court for additional time to pay the debt. I do not think I knew about the new debtor's proceedings at the time of the conveyance." There was no testimony that Mr. Schmitt, Sr., was the owner of any other property of value at the time of the conveyance. The following statement is contained in the record: "Upon questioning by the Referee in Bankruptcy, Mr. de Renthel, the Debtor's attorney, stated that he did not know whether Fred Schmitt, Sr., had any property or debts, but that he knew he had an interest in the business (presumably the brick and concrete construction business)"; but there was no proof that the "interest in the business" was of value.

Appellant presents (1) that the debtor is merely a straw party, acting for his father, and (2) that the conveyance from the father to the son was made for the sole purpose of enabling the son to file his petition under section 74.

1. The testimony in the record does not support the theory that the debtor was a straw party acting for his father. Mr. Schmitt, Sr., testified that at the time he conveyed the property to his son he "was not feeling well" and "thought if something happened to me he (the debtor) would have charge of the property and if he got anything out of it he could help his mother and the rest of the family." "It was not my intention when I deeded the property to my son that he should file one of these debtor's petitions." Although Mr. Schmitt, Sr., testified that the debtor, at the time of the conveyance, did not agree to "help his mother and the rest of the family" with any funds he might ultimately realize from the property, he also said: "I have no interest in the property at this time. If my son gets something out of the

equity of this property, I would not get any part of it. * * * He (the debtor) did not just file this proceeding for my benefit." The debtor himself testified: "I do not hold the property as trustee for my father or any of my relatives. * * * I do not have to account to anybody for any interest in the property."

■ The referee found that the conveyance from the father to the son was a bona fide transfer, although "without consideration other than love and affection arising from the relation of father and son." This finding of the referee was approved by the trial court and, as was said by this court in Ricketts v. Waller, 81 F.(2d) 977, 979: "In such a case it is the practice of the appellate court not to disturb such findings unless manifestly erroneous. [Citing cases.]" See, also, State Central Savings Bank v. Hemmy (C.C.A.8) 77 F.(2d) 458; Rasmussen v. Gresly (C.C.A.8) 77 F.(2d) 252, and cases therein cited.

2. In support of his further contention that, even if the debtor is the bona fide owner of the property, his petition was not filed in good faith, the trustee cites In re Fullagar (D.C.) 8 F.Supp. 602, 603, and In re Collins (C.C.A.) 75 F.(2d) 62, 64, among other cases.

In re Fullagar, supra, presents a situation somewhat resembling the present case, but we think it should be distinguished on the facts. In that case it appeared that the father had conveyed his mortgaged lands to his son "to place [the son] in a more favorable position to refinance on a composition under the Acts of Bankruptcy"; and also that the father was "the owner of a very considerable amount of real estate, other than the lands conveyed by him, and that it is worth more than the obligations against it." It also appeared that after the father had made the transfer of the mortgaged property to his son the father continued to handle all the proceeds from the lands in question and paid the son $10 per week. We do not disagree with the decision of the District Court in that case that the petition of the debtor (the son) was not filed in "good faith," but do not find it applicable here.

The case of In re Collins (C.C.A.8) 75 F.(2d) 62, 64, supra, also presented an instance where a transfer of property had been made by a corporation to one of its stockholders "with the contemplation that when the deed was executed and delivered debtor proceedings would be begun by the grantee," and it also appeared to this court that the transfer was made to hinder and delay creditors of the corporation and that the whole transaction was a "scheme whereby the form of a judicial remedy was to supply a protective cover for a fraudulent design." The facts are clearly distinguishable from those in the present case.

■ No comprehensive definition of "good faith" should be attempted, but the circumstances of each case must control according to long-settled principles of law and equity. The purpose and spirit of the act are to be found in the circumstances of its enactment and in all its terms considered together. There is a duty in the courts to see that provisions of the act are not abused and that its privileges are extended only to those who are within the contemplation of the act. But the court must determine in each particular case, by exercise of judicial discretion in the light of all the facts, whether the debtor has filed his petition in good faith. In re North Kenmore Bldg. Corpn. (C.C.A.7) 81 F.(2d) 656, 657; In re Collins, supra; In re Fullagar, supra; In re Philadelphia Rapid Transit Company (D.C.) 8 F.Supp. 51, affirmed, S. Davis Wilson v. Philadelphia Rapid Transit Company (C.C.A.) 73 F.(2d) 1022; In re Cosgrave (D.C.) 10 F.Supp. 672; In re Francfair, Inc. (D.C.) 13 F.Supp. 513. Where no abuse of discretion is shown and there is substantial basis for the determination made by the trial court, this court will not reverse.

■ We think there was reasonable ground to believe that the transfer of the property in question here from the father to his son was not colorable merely or fraudulent or intended to hinder or defraud the father's creditors, but that it was an outright gift in good faith. As stated by the referee in his report: "Of course, when the owner of a parcel of mortgaged real estate, for the purpose of evading the requirements of the Bankruptcy Act, respecting the filing of schedules listing all of his property and all of his liabilities, places the title to such parcel in an agent, or so-called 'strawman', and then attempts to prosecute a debtor's proceeding in the name of such 'strawman' to extend or reduce the mortgage debt for his own benefit, without disclosing or involving his other assets, such a proceeding would be in bad faith and indeed fraudulent and should be promptly terminated because of

the lack of good faith. But, in my opinion, this case is not of that character."

Here the transfer was not made to permit a mere speculation in a thin equity through resort to the Bankruptcy Act, but was a gift that the son was entitled to endeavor to save under its remedial provisions. It had been made to him fully two years prior to the time when he resorted to the bankruptcy court.

We find no sufficient reason to reverse the order of the trial court.

Affirmed.