## In re BICKNELL.
### No. 3410.

District Court, D. Nebraska,

Lincoln Division.
Feb. 19, 1943.

Herman Ginsburg, of Lincoln, Neb., for debtor.

C. A. Sorensen and C. C. Cartney, both of Lincoln, Neb., for Mrs. Edith Harrison Epp, secured creditor.

DELEHANT, District Judge.

In this proceeding under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, by a memorandum filed October 15, 1942, the court endeavored to set out the reasons which prompted it to overrule, as of that date, a motion by the secured creditor for dismissal of debtor's amended petition and for the vacation of the order of adjudication and reference theretofore made and given thereon. In re Bicknell, D.C., 47 F.Supp. 215. No appeal was taken from the ruling then announced; but the proceeding now comes before the court upon a motion by the secured creditor for an order either striking from the schedules of the debtor the following described real estate situated in Johnson County, Nebraska, to-wit: The Southeast Quarter of Section Seven, Township Four North, Range Twelve, East of the Sixth Principal Meridian, or requiring that the schedules be amended to show that the debtor is the owner of only an undivided one-half interest in that land. Consideration is also given to the proper effective date for the initiation of the stay period of three years, for which the formal order is only now being made. These problems will be considered separately and briefly.

The secured creditor's attack upon the inclusion within the 'operation of the case of the entire title to the tract above described is based upon certain facts which are not essentially in dispute. On May 21, 1941, the debtor who was and is a farmer, and his brother-in-law, Charles W. Peek, who was not and is not a farmer, owned the land in equal shares as tenants in common, subject to the mortgage lien of the secured creditor upon the tract as a whole which was then involved in foreclosure proceedings in which a sheriff's sale to the secured creditor had been made of which confirmation, resulting in the final acquisition of the title and possession of the property by the secured creditor, was imminently obtainable. In that position, the debtor and Peek consulted their attorney, upon whose recommendation and, frankly, with a view to the institution of this action, Peek and his wife, who had no personal desire to preserve any ownership in the land, for the nominal consideration of one dollar which was actually paid by the debtor to Peek, conveyed their interest in the equity of redemption to the debtor who farmed the land. The deed was made on May 21, 1941. This proceeding was filed two days later by

the attorney who had suggested and prepared the deed of conveyance and superintended its delivery.

Whatever infirmities the deed may bear, they can not be effective to divest the debtor of the interest as tenant in common in the property which he owned before the conveyance was made. And a fractional interest in real estate may be administered in this proceeding. In re Williams, D.C., 46 F.Supp. 176. Any possible doubt upon this point has been eliminated by the recent ruling in Mangus v. Miller, 63 S.Ct. 182, 87 L.Ed. ——, decided December 7, 1942, in which the Supreme Court of the United States affirmed the jurisdiction of the court in proceedings under Section 75 of the Bankruptcy Act fully to administer as property of the debtor his interest as a joint tenant in a parcel of real estate, and that, too, although the interest was only the right of one of two vendees in joint tenancy under an executory contract of sale, under which the right of his wife as the other joint vendee had been forfeited by default after his filing of his debtor's petition. So, the secured creditor's demand for the exclusion from the schedules of the land in its entirety must be denied.

Nor, in the court's opinion, can the prayer for the striking of the interest purportedly conveyed by Peek's deed be granted. The moving creditor's position on that point is that, under the laws of Nebraska, the conveyance from Peek to the debtor is void and can confer no interest or title in the property upon the debtor.

In support of her position the creditor cites Sections 36-101 and 36-401, C.S. Neb.1929. The material language of the former section follows: "Every conveyance of * * * any estate or interest in lands, * * * made * * * with intent to defraud prior or subsequent purchasers for a valuable consideration, shall, as against such purchasers, be void"; and of the latter section: "Every conveyance * * * in writing * * * of any estate or interest in lands * * * made with the intent to hinder, delay or defraud creditors or persons, of their lawful rights, damages, forfeitures, debts or demands * * * as against the persons so hindered, delayed or defrauded shall be void." In application of the acts she reminds the court of the relationship of Peek and the debtor, which is near enough to raise against the debtor any adverse presumptions of fraud arising from close relationship, and of the admitted motive for the deed.

The court is not inclined to accept the suggestion of the debtor, that in the present posture of this case and her lien, the creditor can not urge in this court her contention respecting the invalidity of the deed, but must be remitted to a court of equity for the prosecution of a cancellation proceeding. Courts of bankruptcy have not hesitated to examine into incidental, but relevant, matters of this character in the course of their inquiry as to their jurisdiction over allegedly administrable assets; and particularly has that been true in proceedings for the adjustment and composition of debts. In re Collins, 8 Cir., 75 F.2d 62; In re Fullagar, D.C., 8 F.Supp. 602; Platt v. Schmitt, 8 Cir., 87 F.2d 437; Collins v. Federal Land Bank, 8 Cir., 119 F.2d 228.

Both by the cited statutes and under the applicable decisions it seems clear that the conveyances denounced by the law are not void in all circumstances and for every purpose. They are valid between their parties and are void as against—or voidable at the suit of—those purchasers or creditors only who are hindered, delayed or defrauded. German National Bank v. Leonard, 40 Neb. 676, 59 N.W. 107; Baldwin v. Burt, 43 Neb. 245, 61 N.W. 601.

Generally, too, prior secured creditors whose liens are of record and remain unimpaired by subsequent statutorily fraudulent conveyances can not complain of the conveyances since their rights can not be affected thereby. 27 C.J. 474. But the secured creditor here contends that the actual, as well as the designed and intended, effect of the Peek-Bicknell deed, if it be accepted as a transfer to Bicknell of Peek's one-half interest in the equity of redemption in the land sufficient to enable Bicknell to invoke over it the jurisdiction of this court and to secure the delays consequent thereon, would be to hinder and delay, and thereby to defraud, her in the enforcement of her lien upon that share of the land, over which this court could not otherwise have authority in view of the unavailability to Peek individually of relief under Section 75.

It seems, however, that the terms "hinder and delay" as used in the statute are to be taken in their legal or technical, as distinguished from their merely literal,

sense. Hefner v. Metcalf, 1 Head 577, 38 Tenn. 577. And it has long been recognized that certain conveyances of an insolvent debtor's property are unassailable though their consequence may involve the hindrance and delay of the grantor's creditors generally in the collection of their debts; among which are preferential conveyances to favored creditors, except to the extent that they are voidable in bankruptcy.

The secured creditor cites in support of her position In re Collins, 8 Cir., 75 F.2d 62 wherein it was held that where a corporation, incapable of seeking relief under Section 74 of the Bankruptcy Act, 11 U.S. C.A. § 202, conveyed mortgaged real estate without consideration to its sole stockholder so that the grantee, an individual, might immediately file under that act a proceeding for composition or extension and thereby prevent the threatened sale under a Missouri deed of trust of the real estate conveyed, the transaction was tainted with fraud and the trustee's sale would not be enjoined. Of like import essentially are In re North Kenmore Bldg. Corporation, 7 Cir., 81 F.2d 656, conducted under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, In re Cosgrave, D.C. 10 F.Supp. 672, in applying Section 74, 11 U.S.C.A. § 202, and other cases. Though In re Collins, supra, was by the circuit court of our own circuit held inapplicable, in Platt v. Schmitt, 8 Cir., 87 F.2d 437, the distinction left the theory of the Collins case unimpaired.

Similarly, it has been held in several cases instituted under Section 75 of the Bankruptcy Act that a petitioner does not become a farmer entitled to the benefits of the act who owns no real estate except encumbered lands conveyed to him for the sole purpose of enabling him to seek relief under that section. In re Fullagar, D.C., 8 F.Supp. 602; In re Ripley, D.C., 40 F.Supp. 850; In re Cole, D.C., 29 F. Supp. 382; In re Carter, 38 F.Supp. 726.

It would seem, however, that the cited cases arising under Section 75 are supportable upon the ground that their facts negatived the debtor's status as a farmer rather than upon the premise of bad faith in seeking relief under the Frazier-Lemke act. See John Hancock Mutual Life Insurance Co. v. Bartels, 308 U.S. 180, 60 S. Ct. 221, 84 L.Ed. 176, and especially Bartels v. John Hancock Life Insurance Company, 5 Cir., 100 F.2d 813-816 wherein emphasis is placed upon the asserted distinction between Section 75, which does not expressly require initial good faith in the quest of relief under it, and Section 74, which does. A like distinction presumably exists between Sections 75 and 77B. This court does not here make or declare any such distinctions. It merely recognizes those announced by superior authority.

Even under Section 77B it has been held that bad faith can not be imputed to the petitioning corporate debtor by reason of the single fact that it was incorporated for the sole purpose of seeking reorganization of a distressed financial structure under the Bankruptcy Act, In re Loeb Apartments, 7 Cir., 89 F.2d 461; although the authority of that ruling is admittedly impaired, or at least narrowly limited, by subsequent discussions. In re Louis Joliet Garage Corp., 7 Cir., 100 F.2d 751; Snyder v. Fenner, 3 Cir., 101 F.2d 736; In re 1688 Milwaukee Corporation, 7 Cir., 99 F.2d 686; Milwaukee Postal Building Corporation v. McCann, 8 Cir., 95 F.2d 948.

Applying Section 75 of the Bankruptcy Act it has been held that a petitioning farm debtor was entitled to relief in respect of a mortgaged farm, notwithstanding its conveyance to him by his mother after foreclosure decree but within the redemption time through a deed dated four days before, but acknowledged one day after the filing of the debtor's petition. Walker v. Detwiler, 6 Cir., 110 F.2d 154. See also Collins v. Federal Land Bank, 8 Cir., 119 F.2d 228.

It would seem, however, that the debtor's position is rendered more tenable by the fact that the interest transferred to him is the undivided one-half of the equity of redemption in a single tract of land, in which he has long held the remaining one-half interest, subject to a single joint and several first mortgage executed by him and his grantor cotenant to the secured creditor. The debtor argues, reasonably as the court is convinced, that the essential attributes of cotenancy, the title and possessory rights of each cotenant in the entire property, the unity of the secured creditor's debt and lien, and the requirement that a redeeming cotenant redeem, not his fractional interest from a proportionate share of the lien, but the entire property from the entire debt, must not be neglected. It is true, as the secured creditor insists, that each cotenant may individually deal with, sell, or encumber his interest or

share in real estate held in cotenancy. But that has not been done here. The creditor has accepted a single lien upon the farm as a whole, which she has sought to foreclose as a single entity. In the face of that foreclosure the debtor had a right of redemption which Section 75 protects, and that right was to redeem the entire farm.

These implications arising out of cotenancy, and those others which issue from the constitutional grant of power to the congress in respect of bankruptcies, must be held to affect her mortgage lien from its inception. And from the nature of the security as a farm and the status of the debtor, one of her mortgagors, as a farmer, she must be held to have anticipated the contingency of recourse to available Bankruptcy Acts, then present or prospective, and the possibility that the equity of redemption might be united in a single ownership.

To the possible suggestion that the inclusion of the entire farm within the scope of the proceedings may operate to allow a redemption against the creditor under Section 75, sub. s(3) upon a basis less advantageous to her than that contemplated by the statutes of Nebraska, Section 20-1530, C.S.Neb. 1929, it must be answered that no less drastic result than that seems now to be the effect of the applicable Federal law. Wright v. Union Central Life Insurance Co., 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490; also Wright v. Union Central Life Insurance Co., 311 U.S. 273, 61 S.Ct. 196, 199, 85 L.Ed. 184. From the latter opinion (without necessarily approving its reasoning) is taken the following language: "Safeguards were provided to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of the property. * * * There is no constitutional claim of the creditor to more than that. And so long as that right is protected the creditor certainly is in no position to insist that doubts or ambiguities in the Act be resolved in its favor and against the debtor."

The extreme liberality which the courts have exhibited in the construction and administration of Section 75 of the Bankruptcy Act is discernible in Mangus v. Miller, supra, in which the seemingly gratuitous suggestion, pertinent here, is offered by Mr. Chief Justice Stone in his opinion, that, "if pending the proceedings for adjustment or composition with creditors the wife were to release or assign to her co-tenant her interest in the contract, all beneficial interest under which she has forfeited, the technical difficulties thought to exist by reason of her absence as a party from the bankruptcy proceedings might be removed." [63 S.Ct. 186, 87 L.Ed. ——.] In the face of such manifest indulgence by the court of last resort, surely a trial court is admonished to at least reasonable leniency to the debtor in the application of this law.

■ Thus approaching the problem created by the deed, the court considers that it can not conclude that the alleged "hindrance and delay" of the secured creditor, resulting from it and this proceeding are adequate to taint the transfer of title from Peek to Bicknell with invalidating fraud. Hindrance and delay of that character must now and for a measurable time be anticipated by every investor in a farm mortgage, even by investors in loans upon urban real estate, for by subsequent conveyances, the equity of redemption, even of city property, may be transferred to a farmer, who in distress may seek relief in a proceeding of this character. True, conveyances to a prospective petitioner, a stranger to the title, of isolated encumbered property for the express purpose of giving the court an otherwise unobtainable jurisdiction over it may be defeated. (Vide supra). But this is not such a case; and the court, therefore, overrules the secured creditor's motion in its entirety.

■ No order staying proceedings under Section 75, sub. s(2) has yet been made. The court is entering such an order as of this date. In order to determine as of what date the stay should commence, the court lately entered an order to show cause why it should not be made initially effective as of December 6, 1941, the date of filing of the appraiser's report. Cause was shown by the debtor who insists that the stay ought not to be made effective as of any date prior hereto. And the court has concluded that the debtor's position under the peculiar facts of this case is well taken.

Until the present moment there has been no determination by this court as to the precise property over which the action secures jurisdiction. Litigation, prosecuted in successive steps in utter good faith by the secured creditor has prevented such determination. Therefore, no one thus far could have known, with the assurance of

the court's ruling, the important elements of the extent of the debtor's redemption rights, the extent of the property for which he must pay rental or what property actually passes into his custody and possession under Section 75, sub. s(1). So, without determining or agreeing that the court can not in any case make a retroactive stay order, the court's order presently made is effective for the period of three years from this date. The court does note, however, that there is eminent authority for the contention that the stay order should not in any case be made operative retroactively. Paradise Land & Live Stock Co. v. Federal Land Bank of Berkeley, 10 Cir., 118 F. 2d 215.