In re HARRIS.
No. 7927.

District Court, D. Maryland.
June 25, 1936.

T. Poster and H. Hamilton Hackney, both of Baltimore, Md., for debtor.

Wilbert L. Merriken, of Denton, Md., for bankrupt.

## WILLIAM C. COLEMAN, District Judge.

The farmer debtor, Evelyn Harris, in the present proceeding originally filed a voluntary petition in bankruptcy, and later sought the advantages of the first Frazier-Lemke Act (subsection (s) of section 75 of the Bankruptcy Act, as added by Act of June 28, 1934, 48 Stat. 1289). This petition and the proceedings thereunder were dismissed as a result of the Supreme Court's decision declaring this legislation unconstitutional in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106. Thereafter, on September 25, 1935, the debtor filed an amended petition under the new subsection (s) passed by Congress on August 28, 1935 (11 U.S.C.A. § 203 (s), pursuant to which the various steps as required by this legislation have been taken in this court, including the adjudication of the debtor a bankrupt; reference to the Conciliation Commissioner for the purpose of setting aside to the debtor her unencumbered exemptions, if any, and for doing such further acts and passing such further orders as required by subsection (s) (which have been done), including the fixing by the Conciliation Commissioner of the fair yearly rental value of the two farms which the debtor operates and in which she has a one-third interest.

On these farms the Pennsylvania Joint Stock Land Bank of Philadelphia has had a mortgage since 1926, the principal amount of which is $15,355.71 (it having originally been $18,500); the five children of the debtor, as well as the debtor, having joined in this mortgage since the children have a

two-thirds interest and the debtor only a one-third interest in these farms. No interest has been paid on the mortgage since 1931, with the result that there is now overdue interest in the amount of $4,-146.04. In addition, the mortgagee has disbursed for insurance and taxes the sum of $957.86 or a total outlay by the mortgagee of $20,459.61.

On July 31, 1935, while the present debtor was under the jurisdiction of this court as a bankrupt under a voluntary petition, this court granted permission to the mortgagee bank to foreclose its mortgage pursuant to the state law, which was done, there being no apparent equity in the mortgagors. Public foreclosure sale was had; the mortgagee bank bid in the property and the sale was reported to the circuit court for Kent county, but before it could be ratified pursuant to state law, that is, on September 25, 1935, the debtor filed the amended petition, as hereinabove explained. Thereupon, the mortgagee bank petitioned this court for permission to move for ratification of the mortgage sale in the state court. Upon this petition the debtor was required to show cause, if any she had, why such permission should not be granted the mortgagee bank, as a result of which, the debtor answered, reasserting her right to proceed under subsection (s) of section 75, as amended, of the Bankruptcy Act (11 U.S.C.A. § 203 (s), and the matter was set down for hearing and heard by this court on May 21st. At that time testimony was taken and arguments heard, including argument on the point stressed by the mortgagee bank, namely, that this court is without jurisdiction to proceed in this case by reason of the fact that the debtor has but a one-third interest in the mortgaged property, the remaining two-thirds interest being held by her five children, none of whom are parties to this proceeding and all of whom but one are now, and were of legal age on September 25, 1935, when the debtor filed her petition seeking the advantages of subsection (s), as amended. Arguments were also heard upon the constitutionality of this subsection. Thereafter, this court took the matter under advisement, and on the 26th day of May, 1936, the debtor excepted to the appraisal of the property which had been made pursuant to the requirements of subsection (s), and approved and filed by the Conciliation Commissioner on January 29, 1936. These exceptions appear to have been taken seasonably, since

it is provided in subsection (s) that "either party may file objections, exceptions, and take appeal within four months from the date that the referee approves the appraisal." A hearing on these exceptions has not yet been had.

■ The court concludes that the contention of the mortgagee bank is correct that the debtor is not entitled to invoke the provisions of subsection (s) of section 75 of the Bankruptcy Act, as amended, by reason of the fact that there are not before the court parties who are indispensable to the proceeding, to wit, the children of the debtor who have a two-thirds interest in the farm property, possession of which the debtor is seeking to retain under the moratorium provisions of subsection (s).

■ A proceeding of this kind is essentially an equitable proceeding, and a court of equity cannot affect the rights of necessary parties unless they have been brought under the jurisdiction of the court. The test as to the indispensability of a party rests upon two considerations: (1) Whether without that party a decree could be entered that would do justice between the parties who are before the court; and (2) whether if a decree be entered in the absence of such party, the interests of such absent party would be unduly prejudiced. In other words, the question is: Can a final decree between the parties before the court be made without affecting the interests of absent parties or leaving the controversy in such a situation that what is done may be inconsistent with equity and good conscience? See Barney v. Baltimore City, 6 Wall. (73 U.S.) 280, 18 L.Ed. 825; California v. Southern Pacific R. Co., 157 U.S. 229, 15 S.Ct. 591, 39 L.Ed. 683.

It requires no argument to show that the interests of the children of the debtor would be very materially affected were this proceeding allowed to progress and the debtor accorded the rights which she is seeking. For example, in consideration of the stay of the mortgage foreclosure on the farm property for a period of three years or such lesser period as the court may determine, and permitting the debtor to remain in possession of her property during such period, she is required to pay into court a reasonable rental for the same, "the amount and kind of such rental to be the usual customary rental in the community where the property is located, based upon the rental value, net income, and earning capacity of the property. Such rental shall be paid into court, to be used, first, for payment of taxes and upkeep of the property, and the remainder to be distributed among the secured and unsecured creditors, and applied on their claims, as their interests may appear." Subsection (s), par. 2, as amended (11 U.S.C.A. § 203 (s) (2). Such reasonable rental has been fixed by the Conciliation Commissioner at $750 per year for one farm and $200 for the other, which, as disclosed by the evidence in the present case, can only come out of the revenue derived from cultivation of the mortgaged farms, that is to say, from the crops or increments of the land in which the children have the major interest. Having this interest, this court has no right, without their consent, to accept any of their portion of it as rental from their mother for the properties, and a fortiori would have no right, without their consent, to disburse any portion of their interest in payment of their mother's creditors. If it be argued that it is the duty of the court to accept only such rental and, therefore, to make only such disbursements to maintain the property, as would represent the proportionate part of the rental on the debtor's one-third interest, suffice it to say that the children would still have to consent to such apportionment. See Barney v. Baltimore City, supra. But if they intend to live on, and to help operate the farms, then they, as well as their mother, would have to share in the rental. On the other hand, if we assume that she alone would remain on the farms, or merely she and some of the children, the full amount of the rental would still have to be paid because occupancy would not be partial, and more than one-third of the entire yearly net income from the farms—stated to be $2413.86 for the first eleven months of 1935—would be necessary in order to meet such rental. Thus, under any possible situation, the interest of some, if not all, of the children is involved. Presumably they, too, may have separate creditors. If so, such creditors must be afforded an opportunity to pass upon a plan for liquidation of what is due them before being compelled to foregoing all chance of settlement, for perhaps three years. Furthermore, for any person to be afforded the advantages of section 75, he or she must be "a farmer" as therein defined (subsection (r), as amended 11 U.S.C.A. § 203 (r), which means that all

of the debtor's children must be shown to be such, if they seek these advantages, and there is no such showing.

The language of paragraph 4 of subsection (s), as amended (11 U.S.C.A. § 203 (s) (4), impliedly supports the conclusion here reached, for it recites: "The provisions of this title shall be held to apply also to partnerships, *common,* entirety, joint, community ownerships, or to farming corporations where at least 75 per centum of the stock is owned by actual farmers, and any such parties may join in *one* petition." (Italics inserted.) That is to say, the act seems to recognize that the court has no jurisdiction of tenants in common unless *all* such tenants are before the court, providing that, for simplification of the proceedings, all may join in one petition.

Since the court rests its decision upon the aforementioned ground and finds that for this reason alone the present proceeding must be dismissed, it becomes unnecessary to consider any of the other questions which have been raised by the pleadings up to the present time.

An order will be signed in accordance with this opinion.