**In re EASTMAN.**

**No. 5977.**

District Court, W. D. Louisiana,
Lake Charles Division.

Aug. 22, 1939.

W. H. Walshe, of New Orleans, La., for Federal Land Bank of New Orleans.

R. H. Agate, Jr., of Welsh, La., for debtor.

DAWKINS, District Judge.

The findings of fact in this proceeding are set forth in the reports of the Supervising Conciliation Commissioner under

dates of June 5th and August 12th, 1939, and are adopted by this Court.

The debtor owns 120 acres of land, which was included in a joint lease, by which he and some four other persons "pooled" their properties, amounting to 562 acres in wildcat territory, for the stated purpose of having a well drilled somewhere on some part of the property. No other consideration was provided. If drilling had been done upon one lessor's land, other than that of the debtor, it would have served to tie up the latter's interest so long as those operations were prosecuted in good faith, whether oil or other minerals were discovered or not; and if production was attempted, only the person who owned the land from which it was produced would have received any royalties, and there would have been no obligation to drill on the bankrupt's land except under the implied obligations to protect it against drainage and to reasonably develop the property. At best the possibility of anyone expending the money necessary to drill upon this small acreage would be so remote and uncertain that the prospect of the debtor realizing anything from the lease is nothing more than a hope.

By instituting these proceedings, the debtor has tied the hands of his creditors until his rights under Section 75 of the Bankruptcy Law, 11 U.S.C.A. § 203, have been properly determined. That section, I think, contemplates that when a debtor invokes its provisions, he should bring forward some plan or proposal for the adjustment of his affairs which has some reasonable basis for consideration by his creditors. He cannot be permitted to simply call what he suggested a proposal, when it consists of indefinite and uncertain terms, which cannot be considered, or to advance a plan which is so impossible as to preclude its being entertained, merely as a preliminary step to taking advantage of Subsection (s). If he owes more than his property is worth, then he should frankly recognize this fact and offer such sums to his creditors as reasonably represent the present value of his estate, less whatever exemptions he may lawfully claim and such terms of payment as appear to be possible of meeting under the circumstances.

This may include a portion of his property, less than the whole, which he desires to retain as a home and the balance may be excluded or surrendered to permit his creditors to realize thereon according to the nature and rank of their claims.

If this is done in good faith, and his proposal is rejected, then he is entitled to take advantage of Subsection (s) for the purpose of accomplishing the same results, and the law accords him a period of three years to work out his affairs, on substantially the same basis while paying the fair rental value of his property in the meantime, subject to the powers of the Court at any time to require a liquidation of his estate, if there appears no possibility of rehabilitating the debtor, or if continuation would result in the serious injury to the rights of his creditors. Wright v. Vinton Branch of Mountain Trust Bank et al., 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455. I think the duty is upon the debtor to affirmatively pursue these courses and to seek these remedies, and that he cannot simply retire into a state of inactivity and force upon his creditors the raising of these issues while he remains protected by the injunctive features of the statute.

The condition of the debtor's affairs and the revenues which he produced during the year 1938 of $156.50, as shown by the report of the Supervising Commissioner were barely enough to pay the taxes of $153.62, and left nothing to apply on his indebtedness, which to the Federal Land Bank alone, amounts to $3,800.54, and on which nothing has been paid since 1932.

Under all the circumstances, I am constrained to hold that the findings of the Supervising Conciliation Commissioner, that it is and will be impossible to rehabilitate the debtor and the recommendation that a trustee should be appointed to wind up his affairs, are fully justified.

My conclusion is that application to extend or renew the mineral leases should be denied; and further, that there should be judgment appointing a trustee and directing that the affairs of the debtor be liquidated as provided by law.

Proper decree should be presented.