## In re RIPLEY.

### No. 2050.

District Court, W. D. Missouri, Central Division.

Sept. 1, 1941.

W. H. Martin, of Boonville, Mo., for creditors.

H. K. Bente and G. W. Anson, both of Sedalia, Mo., for debtor.

John J. Stegner, of Boonville, Mo., Conciliation Com'r.

COLLET, District Judge.

The proceeding is for composition or extension of debt under the Frazier-Lemke Farm Mortgage Act, 11 U.S.C.A. § 203. A petition for composition was filed and referred, the first creditors meeting held, a proposal submitted and refused, an amended petition under subsection (s) filed, a motion to dismiss filed and sustained by the Conciliation Commissioner, and a petition for review filed by the debtor. The entire record including a transcript of the testimony adduced at the first creditors meeting and upon the motion to dismiss is submitted with the petition for review of the Conciliation Commissioner's action.

From the record it appears that one Garland Young owned a farm of approximately 80 acres upon which there was a first mortgage of $2,800. Unpaid taxes and interest increased the indebtedness against the farm to approximately $3,100. Young apparently decided to abandon the farm to the mortgage holder. Glenn Ripley, the present debtor, heard of this and about February 1, 1941, purchased Young's title for $50. The mortgage holder learning of the transfer of title notified Ripley in writing on February 5, 1941, that a foreclosure was imminent. No inquiry had been made by Ripley of the mortgage holder concerning the status of the mortgage. On February 5th, Young had a public sale of his personal property. February 6th, Ripley moved to the farm. On the same day the first publication of notice of the foreclosure sale was made. March 3rd, the petition for composition or extension was filed.

At the time Ripley purchased Young's title the former owned property consisting of several pigs about one month old. The exact number is disputed but the total was less than twenty. These were unencumbered. In addition he owned some household goods mortgaged for $275 which were valued by Ripley in his schedule at $50. He had possession of eleven milch cows under an arrangement with the owner that he was to pay $4 per month for the use of each cow, feed them and have the milk from the cows. The arrangement did not pay Ripley for his labor, hence as he summarized the result, the owner of the cows did not get what the agreement provided for. Ripley owned no farm implements of any kind, no work stock or tractor, no poultry. He had been a farmer all his life and had accumulated some $3,300 of unsecured debts. When the original petition was filed on March 3rd, he valued the farm at $1,800. The plan which he submitted to his creditors contemplated paying the secured creditor $1,800 on the mortgage. This amount he proposed to borrow from someone. The interest on the mortgage, and the past due taxes, the latter amounting to $202, he proposed to pay with the proceeds from the sale of the pigs. He also proposed to pay his unsecured debts from the increase from the pigs after they reached maturity. The proceeds from the sale of milk from the cows was included in his estimated resources. However, as he stated that compliance with his rental contract of the cows did not enable him to come out even on that operation the life expectancy of the pigs constituted his only hope of carrying out the plan he proposed.

Mr. Ripley does not appear from the testimony concerning his business transaction with Mrs. Reser to have been as naive as his proposal to his creditors would indicate. It appears that he borrowed several hundred dollars from that lady, giving her chattel mortgages on personal property as security with the request that she not record the mortgages. She followed directions with the result that Ripley gave other mortgages on the same property and permitted the latter mortgagees to be foreclosed without notifying Mrs. Reser, leaving her with no security and Ripley with the proceeds of two loans procured on the same property.

Mr. Ripley insists that he bought the title to the farm in good faith for the purpose of making it his home and without

any thought at the time of the benefits of the Frazier-Lemke Act. With his avowed purpose to make the farm his home, at least for three years, the Commissioner does not appear to disagree. But Mr. Ripley did not meet with success in sustaining his contention that the title to the farm was not purchased for the express purpose of buying a moratorium. The Commissioner found to the contrary and dismissed the proceedings. That finding reflects the opinion of the Court. The Commissioner further found that there was an entire lack of good faith in the filing of the debtor's petition. That finding is, of course, without force if it is understood to refer to the debtor's good faith in his intention or ability to pay his debts. See John Hancock Insurance Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176. But the finding is applicable to the lack of good faith of the debtor in his assertion that he is a farmer within the meaning of the Act, i. e. "an individual who is primarily bona fide personally engaged in producing products of the soil", etc. 11 U.S.C.A. § 203, sub. r. If he is not such a person he is not entitled to the benefits of the Act. One who purchases the naked title to an encumbered farm in which there is no equity on the eve of a foreclosure, for the purpose of thereby bringing himself within the Act is not a "farmer" as to that land and is not entitled to the benefits of the Act. The record compels the conclusion that Mr. Ripley could have had no other purpose. The proceedings were properly ordered dismissed by the Commissioner for want of jurisdiction. Upon this review of the record the cause is dismissed for that reason.