## In re WILLIAMS.

### No. 6380.

District Court, W. D. Louisiana, Shreveport Division.

July 25, 1942.

Goodwyn H. Harris, of Mansfield, La., for bankrupt.

L. E. Colvin, of Mansfield, La., for Federal Deposit Insurance Corporation.

DAWKINS, District Judge.

The factual situation of this case as to the farmer status of the debtor is set forth in the memorandum opinion handed down on April 28th, 1942, holding that Williams was entitled to invoke the provisions of Section 75 of the Bankruptcy Law, 11 U. S.C.A. § 203. 46 F.Supp. 175. Attorneys for the principal creditor, the Federal Deposit Insurance Corporation, have now asked that the restraint against further proceedings for the execution of the judgment of foreclosure in the State court be recalled and released, except as to the undivided 1/18th interest of the debtor, which was owned before the suit in the State court was filed. In the alternative, if it is found that the purchase of the interests of the other heirs vest this court with jurisdiction of all the property save and except the un-divided 1/9th interest of Mrs. Ruth Williams Goudeau, then that such modification of the order be made as will allow this creditor to proceed against her said interest alone.

A case very similar to the present one in its aspects of title acquired to the property claimed by the debtor for the purpose of proceeding under Section 75 of the Bankruptcy Law was that of Wright v. Union Central Life Insurance Company, 304 U.S. 502, 505, 58 S.Ct. 1025, 82 L.Ed. 1490. Wright owned 280.31 acres of land, 80.31 acres of which was on October 1, 1925, mortgaged for the sum of $3,000, and on the same date the remaining 200 acres was encumbered to the extent of $9,000. In 1931, he deeded the first tract to his son and three separate forties out of the second tract of 200 acres to his wife, daughter and son-in-law, respectively, subject to definite portions of the mortgage indebtedness, but without assumption by any of the grantees.

On January 3, 1934, the mortgagee brought foreclosure on the 80.31 acre tract joining the mortgagor and his son as defendants. A judgment of foreclosure was rendered June 9, 1934, and on July 12th of the same year, it was sold at sheriff's sale to the mortgagee. Delivery of the final deed was delayed one year (for redemption) under the Indiana law. August 2nd, 1935, the period of one year having expired, sheriff's deed was delivered.

Wright filed October 20, 1934, a petition for relief under Section 75 as it appeared in the first Frazier-Lemke Act, listing the whole 280.31 acres as his own despite the previous disposition of all of it but the 80 acres as above set out. On April 13th, 1935, the son, daughter, etc., gave Wright quitclaim deeds to their interests.

May 27th, 1935, the mortgagee obtained a personal judgment on the $9,000 note against Wright and for foreclosure on the 200 acre tract, which he bought at sheriff's sale July 20, 1935.

October 11th, 1935, the debtor amended his petition in accordance with the amendment of Section 75 of the Bankruptcy Law of August 28th, 1935, which had been passed following the decision in the case of Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L. Ed. 1593, 97 A.L.R. 1106. On July 20, 1936, the one year allowed for redemption of the 200 acres, which had also been sold at

sheriff's sale, having expired, the mortgagee received sheriff's deed therefor. On July 29th, 1936, the mortgagee filed and on December 14th, the United States District Court allowed a motion to strike from the debtor's schedule the whole 280.31 acres. This included, of course, the 80 acres which had never been sold by Wright and still stood in his name when his original petition was filed in October, 1934, which the court held to be "properly scheduled". Later in December, 1936, petitioner asked leave to amend his schedule to set forth the reconveyance by his children on April 13, 1935, which was denied December 31st, 1936. Petitioner appealed from both orders, (1) striking from the schedule the land, and (2) denying leave to amend, and each was affirmed by the Court of Appeals.

On September 13th, 1935, prior to the debtor's attempt to amend his original petition under the new act, the mortgagee had filed in the State court an action for possession of the 80.31 acres, which was granted and the judgment affirmed by the Supreme Court on April 2nd, 1937. A similar judgment affecting the 200 acres was handed down on October 26th, 1937.

The United States Circuit Court of Appeals had issued a restraining order against ousting the debtor from possession, which by stay of mandate had continued the debtor in possession to the date the Supreme Court of the United States finally passed on the case. That court held that since the debtor had sold to his son and did not own at the filing of the first petition on October 20th, 1934, the 80.31 acres, the same "did not * * * pass into the hands of the bankruptcy court." Nor was the amended petition, filed December 19th, 1935, any more effective in bringing the tract within the purview of the bankruptcy court.

On April 13th, 1935, Wright's family "relinquished all their right and interest in his lands" [304 U.S. 502, 58 S.Ct. 1029, 82 L.Ed. 1490], including the 80.31 acres, but the court held that his "receipt of this gift of land was not effective in and of itself to bring the land within the control of the bankruptcy court." It was decided, therefore, that as to the 80.31 acres, the sheriff's sale having been had, and the year for redemption having elapsed before the passage of the amended act "with the delivery of the deed, prior to any effective extension of the period of redemption," this prevented the property from being brought under the jurisdiction of the bankruptcy court. The title had been lost.

■ It was then pointed out that on October 29th, 1934, when Wright filed his first petition, he was "undoubtedly the owner of the 80 acres out of the 200-acre tract * * * no proceedings to foreclose them had begun." The court then said:

"These 80 acres were clearly within the jurisdiction of the bankruptcy court, but we shall not give them separate discussion, for they are controlled a fortiori by our ruling with respect to the other 120 acres out of the 200-acre tract.

"(c) The status of these 120 acres, deeded in forty-acre parcels, to three members of the family, is governed by other facts. These parcels passed to the other members of the family prior to the filing of the petition for composition on October 29, 1934. Petitioner, however, included them in his schedules. The grantees had title on December 19, 1934, when petitioner filed his first amendment to the petition for composition. On April 13, 1935, these parcels were reconveyed to petitioner; on May 27 judgment for foreclosure was entered and on July 20, 1935, a sale was had. Respondent became the purchaser. The right of redemption expired July 20, 1936. Between the sale and the expiration of the period of redemption, two events occurred. The Congress enacted the Act of August 28, 1935, which added to the Bankruptcy Act, section 75, a new subsection (s) to take the place of the subsection (s) held invalid in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106. This new subsection (s) was sustained in Wright v. Vinton Branch, 300 U.S. 440, 57 S.Ct. 556, 81 L. Ed. 736, 112 A.L.R. 1455. Secondly, the petitioner, on October 11, 1935, filed a second amendment to his petition for composition and was 'duly adjudged a bankrupt.' Both of these events are significant in reasoning out the status of the 120 acres.

"If the rule of the General Bankruptcy Act is followed, property acquired after the filing of a petition for composition under the provisions of section 75 would not be subject to bankruptcy administration. Section 75(n) in effect at the time of the filing of the petition leads to the conclusion that, at that time, a similar rule, as to property subsequently acquired, would apply. At the time petitioner filed his first amendment, seeking to be adjudged a bank-

rupt, subsection (n) continued in the same form. It was changed by the Act of August 28, 1935, to the language shown below.[1] By the terms of the second and third paragraphs of section 4 of that Act, all rights of redemption of petitioner which had not expired in land within the jurisdiction of the court of bankruptcy were extended. By the earlier subsection (n) the line of cleavage, between property subject to the bankruptcy jurisdiction and property free from it, came at the date when the 'farmer's petition or answer was filed.' When this language was adopted there was no provision for a petition in bankruptcy under section 75. There was provision only for a petition for composition or extension. By section 4 of the Act of August 28, 1935, subsection (n) was changed to comport with subsection 75(s), permitting a petitioner to amend and ask 'to be adjudged a bankrupt.' *We are of the opinion that it is the date of filing this request for adjudication as bankrupt which fixes 'the line of cleavage' as to the property.* This conclusion is really in conformity with the reasoning governing the rule in the General Bankruptcy Act. There the first petition seeks an adjudication in bankruptcy. Under section 75, it is only the later amendment which does. As the 120 acres had been reconveyed to the petitioner prior to his filing of the petition of October 11, 1935, seeking adjudication as a bankrupt, his interest in the 120 acres was subject to bankruptcy jurisdiction. As the land was reconveyed to the petitioner prior to the decree of foreclosure, petitioner was an owner entitled to redeem after the sale. Ind.Stat.Ann.Burns, 1933 c. 40. § 2-4001 et seq. The amendment of October 11, 1935, was the first opportunity to bring the 120 acres into the jurisdiction of the Bankruptcy Court, and we think it had that effect. Second. The conclusion that all the lands in controversy, except the 80.31-acre tract, are within the jurisdiction of the Bankruptcy Court under the petitioner's amendment asking to be adjudged a bankrupt and are lands, subject to petitioner's right of redemption, as extended by subsection (n) of section 75, requires the reversal of the judgments below, as to these lands, unless the provisions of section 75 (n), extending the period of redemption, are unconstitutional. Respondent insists that these provisions are a direct invasion of the state's rights under the Tenth Amendment * * * and violative of the respondent's own rights, by virtue of its title acquired by purchase at the judicial sale, in contravention of the Fifth Amendment." (Italics by the writer of this opinion.)

The court next took up the question of the constitutionality of Subsection s, in so far as it attempted to extend the period of redemption, and sustained it.

▆ It would appear from the above that the situation of the debtor in the case now before the court is very similar to the Wright case, in so far as the time and circumstances of the acquisition of title to the property are concerned. While Williams had owned in his own right only a 1/18th interest, he acquired the interest of all of the other heirs (except 1/9th) before filing his petition, which had the effect of drawing 8/9ths of it under the jurisdiction of the bankruptcy court, since he included it in his schedules. The fact that the foreclosure had only started in the State court differs in no wise from the circumstances in the Wright case, where not only had there been a judgment upon the mortgage, but a sale and adjudication by the sheriff, which left only the elapsing of one year for redemption before absolute title could vest in the purchaser, the mortgagee in that case. And again, the circumstances of that case, that is, the title to all but the 80 acres of land having been conveyed to members of his family and been re-acquired even after the filing of his petition created just as strong circumstances with respect to the reason for the debtor's action as does the fact of the purchase by Williams of the interest of his co-heirs. The purpose was undoubtedly to bring all the property under

---

[1] "'(n) The filing of a petition or answer with the clerk of court, or leaving it with the conciliation commissioner for the purpose of forwarding same to the clerk of court, praying for relief under (this section) section 75 of this Act, as amended, shall immediately subject the farmer and all his property, wherever located, for all the purposes of this section, to the exclusive jurisdiction of the court, including all real or personal property, or any equity or right in any such property, including, among others, contracts for purchase, contracts for deed, or conditional sales contracts, the right or the equity of redemption where the period of redemption has not or had not expired, or where a deed of trust has been given as security, or where the sale has not or had not been confirmed, or where deed had not been delivered, at the time of filing the petition. * * *'

the protection of the bankruptcy law in this proceeding, which Williams had filed and to take advantage of Subsection s of Section 75.

In the recent case of Miller v. Mangus, 125 F.2d 507, 511, the Court of Appeals for the Tenth Circuit held that the wife was a necessary party to a proceeding under Section 75 where the husband, before the period for redemption had expired, filed his petition, but did not attempt to bring her in until her one-half interest as a joint tenant had been forfeited under the terms of the contract affecting the land. It was stated that the person who had obligated himself to convey the title on the payment of the balance of the purchase price had thereby become vested with one-half interest in the property, complicating the situation so that a court of equity could not deal with the matter fairly as between the person and the debtor who would have merely the extended period under Subsection s, to complete the contract for title. In disposing of the matter the court said:

"The question presented under this rather anomalous state of facts is whether the failure of the court to acquire jurisdiction over the entire estate is fatal to the jurisdiction of the court over the estate of Walter L. Mangus. In other words, is Rose L. Mangus an indispensable party to the proceedings? This question can best be answered by a practical consideration of the legal effect of a final judgment between the parties as they are now cast. It is well settled that where an indispensable party is absent the court may not grant any relief. See Franz v. Buder, 8 Cir., 11 F.2d 854; Peterson v. Sucro, 4 Cir., 93 F.2d 878, 114 A.L.R. 890, and Barney v. Baltimore City, 6 Wall. 280, 73 U.S. 280, 18 L.Ed. 825. See, also, In re Harris, D.C., 15 F.Supp. 404, and Shields v. Barrow, 17 How. 130, 15 L.Ed. 158. Bankruptcy is an equitable proceeding, and the rule is applicable here. Vol. 1, Remington on Bankruptcy, Section 23, Fourth Edition and In re Harris, supra.

"An estate created by a joint tenancy is subject to alienation, levy and execution and is therefore susceptible of administration under the general bankruptcy law. Tiffany Real Property, Vol. 2, Section 425; Ames v. Chandler, [265 Mass. 428], 164 N. E. 616; In re Carpenter, D.C., 5 F.Supp. 101; Thornburg v. Wiggins [135 Ind. 178], 34 N.E. 999 [22 L.R.A. 42, 41 Am.St.Rep. 422]; In re Wallace, D.C., 22 F.2d 171, and White, Trustee, v. Stump, 266 U.S.

310, 45 S.Ct. 103, 69 L.Ed. 301. Cf. In re Brown, D.C., 60 F.2d 269. Under general bankruptcy the trustee becomes seized with whatever interest the bankrupt owned in the property and is charged with the duty of administering the same for the benefit of the creditors. It contemplates a marshalling and sale of the assets of the bankrupt, and the distribution of the proceeds to the creditors as their interest appears.

"Thus it is conceivable that the estate of Walter L. Mangus would be the proper subject matter of a general bankruptcy proceedings, absent jurisdiction of the bankruptcy court over the estate of the joint tenant. 11 U.S.C.A. § 110, sub. a. In re Brown, supra. Cf. In re Carpenter, supra. But a proceeding under subsections a–r of 75, 11 U.S.C.A. § 203, subs. a–r, does not operate to pass title from the bankrupt to the trustee or the bankruptcy court, but contemplates a status quo pending an adjustment and composition of his debts and is designed to grant a moratorium wherein the debtor will retain title and emerge from the proceedings seized with all the property subjected to the bankruptcy proceedings. Wright v. Union Central Life Insurance Co., supra.

"This is what Walter L. Mangus seeks to accomplish here. Suppose then that he is permitted to invoke the jurisdiction of the court over his estate and in his attempt to adjust and effect a composition of his debts what are his rights and what are the rights of Miller? The contract between Walter L. Mangus, Rose L. Mangus, and Miller provides for the payment of the sum of $4,000 for a deed to certain property; the deed to be delivered upon the payment of the contract price. In effecting an adjustment and compromise shall Mangus be required to pay the entire purchase price for an estate in common with the seller, which could be no more than a one-half interest, because Miller is now seized of the interest of Rose D. Mangus over which the court has no jurisdiction, or shall Miller be required to accept one-half of the unpaid indebtedness· for one-half interest in the property, to be held as tenant in common with Mangus? It becomes readily apparent that any final· order or judgment which the court could make in the premises would be inconsistent with equity; in contravention of the constitutional rights of the· parties, and contrary to the fundamental purposes of the Bankruptcy Act. The manifest difficulties are insurmountable."

It is hard for the writer of this opinion to see why Rose Mangus was a necessary party to that case. The court definitely holds that all her interest had been forfeited and acquired by Miller, and it is only those who have some right to protect who are necessary, to say nothing of indispensable, parties. Numerous authorities had just been cited by the court to the effect that in bankruptcy, the interest of the bankrupt, of whatever character it might be, becomes vested in the trustee of the bankrupt estate and can be sold for whatever it will bring for the benefit of creditors, etc. If it is an interest in indivision, partition by licitation can be required and the proceeds divided between the trustee and third persons. It is easy to understand that where the creditor or person claiming adversely in the mortgage suit was before the court as co-owner of an undivided one-half interest, that complications would arise in attempting to do justice, but in the present case, the other 1/9th interest is owned not by the creditor, but by one of the heirs, and the obligation of the debtor is solidary with respect to the whole of it and the mortgage covers the entire interest in the property. If the debtor is entitled to stay any part of the debt as to himself, therefore, it would seem he has the right to postpone the whole of it, as to his interest. The creditor would not become vested with any ownership in the property until foreclosure against the 1/9th interest of the other heir of the mortgage, which is indivisible. If the debtor should discharge the debt, then he would be subrogated to the mortgage lien against the interest of his co-heir. If not, and a liquidation of the estate is had, the claim of the creditor against the undivided interest would take its superior place subject to the debtor's right to purchase the undivided interest, and if successful to protect it against further suit by the creditor under the provisions of Subsection s.

My conclusion is that the bankruptcy court has jurisdiction over all of the debtor's property, including 8/9ths interest in the real estate, the other 1/9th being owned by Mrs. Ruth Williams Goudeau, which latter interest is subject to foreclosure at the hands of the opposing creditor. If this creditor becomes the purchaser of that interest, it will then be time, in an appropriate proceeding, to consider its rights against the debtor with respect to possession or partition.

For the reasons assigned, the motion will be sustained to the extent of a 1/9th interest to the property of Mrs. Ruth Williams Goudeau, and otherwise denied.