In re BICKNELL.

No. 3410.

District Court, D. Nebraska, Lincoln Division.

Oct. 16, 1942.

216

C. A. Sorensen and C. C. Cartney, both of Lincoln, Neb., for Edith Harrison Epp, moving creditor.

Herman Ginsburg, of Lincoln, Neb., for Robert F. Bicknell, debtor.

DELEHANT, District Judge.

In this proceeding under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, the debtor, upon failure to obtain a composition or extension of his debts within the contemplation of subsections a to r inclusive, of the general section, filed on November 10, 1941, his amended petition under subsection s. On that day an order of adjudication and reference to the local conciliation commissioner was made by the judge of this court, following which the first meeting of creditors was held, appraisal of property was had, rental order was entered, and the exempt property of the debtor set aside to him.

The proceeding is presently before the court upon the motion of a secured creditor, Edith Harrison Epp, for the dismissal of the debtor's amended petition and the vacation of the order of adjudication and reference entered thereon. That motion is resisted by the debtor. Upon the issues thus ensuing, reference was made to Edward G. Garvey, Supervising Conciliation Commissioner, who has conducted a hearing thereon and made his report to the court recommending the denial of the motion to dismiss. The moving secured creditor has excepted to the report and hearing has now been had before the court.

The motion rests upon three separate, though not altogether distinct grounds. They will be stated and discussed in their order.

It is first contended that the debtor is not entitled to relief under subsection s of the Frazier-Lemke Amendment, because of his alleged failure to comply with Section 75, subsections a to r, and particularly subsection i of the Act in that he made no real proposal for composition or extension of time for payment of his debts. The debtor, in effect, offered only to make application to the federal lending agencies for a loan upon the real estate covered by the secured creditor's mortgage in the highest obtainable amount, and to apply the proceeds of such a loan, first to the payment of the expense of obtaining it; secondly, to the payment of taxes unpaid on the land, and finally the residue to the secured creditor in full satisfaction of her mortgage indebtedness.

There is ample justification for criticism of the proposal, even for the contention that it was no proposal at all. It bound the debtor to no real obligation and was little, if anything, short of an insult to the intelligence of the creditor and sheer trifling with the court and its officers. It could not have been supposed by the debtor either that any comprehending or prudent creditor would accept such a proposal or that the court would, or within the tests proposed by Section 75 i could, approve it. A proposal of the general character involved should be made only after due negotiation for the contemplated loan and the grant of a commitment upon it, which might be the basis of a concrete offer to the creditors, however disappointing it might actually be.

But the writer of this memorandum can not infer that in making such a proposal, the debtor or his attorneys proceeded in actual bad faith. Unfortunately, the files in this division of this court reveal that the debtors' proposals made in a substantial number, probably a clear majority, of the cases pending or conducted here have followed that exact pattern. And it seems to be acknowledged that the practice was prompted by a suggestion of the then senior judge of the court that a debtor, who was in perplexity as to what offer of adjustment he might make, might at least propose to borrow all he could on his lands and offer the net proceeds of the loan to his secured creditor. So, with that historical background, the court will now be reluctant to impute formal bad faith to a creditor who has heretofore followed the precedent,

though for the future the practice must be disapproved.

There is authority for the position taken by the moving creditor. In re Buxton's Estate, D.C.1936, 14 F.Supp. 616; In re Coleman, D.C.1938, 21 F.Supp. 923; Id., 6 Cir., 1937, 93 F.2d 1001, (Memorandum decision); In re Mussellman, D.C.1936, 25 F.Supp. 249; Mussellman v. Bank of Williamstown, 6 Cir., 1938, 99 F.2d 1009, (Memorandum decision); In re Alatalo, D.C.1938, 26 F.Supp. 276; In re Widdersheim, D.C. Sept. 8, 1939, 29 F.Supp. 793; In re Eastman, D.C. Aug. 22, 1939, 29 F. Supp. 954; Heldstab v. Equitable Life Assurance Society, 10 Cir., 1937, 91 F.2d 655; Massey v. Farmers', Etc., Bank, 4 Cir., 1938, 94 F.2d 526; Sheets v. Livy, 4 Cir., 1938, 97 F.2d 674. Upon other facts it has been held that the actual existence of bad faith in the institution or prosecution of a proceeding under the amendment will justify its dismissal. In re Stoner, D.C., 38 F.Supp. 155; In re Carter, D.C., 38 F.Supp. 726; In re Cole, D.C., 29 F.Supp. 382; In re Ripley, D.C., 40 F.Supp. 850. The cases in the latter group are responsive chiefly to the question of good faith as it is affected by the debtor's status as a farmer.

However, the persuasiveness of the reasoning in many of the opinions in the group of cases first cited has been materially impaired by John Hancock Mutual Life Insurance Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 223, 84 L.Ed. 176, the opinion in which was delivered on December 4, 1939. Prior to that date, it was quite generally considered that, since financial rehabilitation of the petitioning debtor was the professed and declared objective of the Frazier-Lemke Amendment, the absence of any reasonable probability of such rehabilitation was adequate justification for the dismissal of actions instituted under the law. And it was a very short and quite logical further step in reasoning to conclude that the want of such probability affected a proposal for extension or compromise with the infirmity of bad faith. Those premises implicitly underlie certain of the opinions first cited herein and are expressly asserted in others.

John Hancock Mutual Life Insurance Co. v. Bartels repudiated that construction of the act. Among other things it declared: "The subsections of Section 75 [11 U.S.C.A. § 203] which regulate the procedure in relation to the effort of a farmer-debtor to obtain a composition or extension contain no provision for a dismissal because of the absence of a reasonable probability of the financial rehabilitation of the debtor. Nor is there anything in these subsections which warrants the imputation of lack of good faith to a farmer-debtor because of that plight. The plain purpose of Section 75 was to afford relief to such debtors who found themselves in economic distress however severe, by giving them a chance to seek an agreement with their creditors, subsections a to r, and, failing this, to ask for other relief afforded by subsection s. The farmer-debtor may offer to pay what he can, as Bartels did, and he is not to be charged with bad faith in taking the course for which the statute expressly provides. The only reference in Section 75 to good faith is found in subsection i, which relates solely to the confirmation of proposals for composition or extension when the court must be satisfied that the offer and its acceptance are in good faith and have not been made or procured by forbidden means or except as provided in the statute. That provision manifestly hits at secret advantages to favored creditors or other improper or fraudulent conduct."

An adequate understanding of the Bartels opinion is promoted by an examination of the Circuit Court's divided ruling which the Supreme Court affirmed. Bartels v. John Hancock Mutual Life Insurance Co., 5 Cir., 100 F.2d 813, 816. In the face of a pointed dissent upon the issue, the writer of the majority opinion spoke thus regarding the question of good faith: "The courts have spoken of a lack of 'good faith' in invoking Section 75 as a cause for dismissing the whole proceeding, and some countenance has been given the idea in a foot-note to the opinion in the case of Wright v. Vinton Bank [300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455], supra. We do not understand it to be a part of the court's opinion. The note mistakenly states that good faith is made a requirement of the initiation of a proceeding under Sect. 75. That requirement appears in Sect. 74 (a), 11 U.S.C.A., Sec. 202 (a). Section 75 nowhere mentions initial 'good faith' as a prerequisite to invoking Subsection (s), or going through bankruptcy if rehabilitation under that Subsection fails. The good faith of the offer and acceptance is to be enquired into by the court before confirming a composition or extension accepted by the majority of creditors, Subsection (i), 11 U.S.C.A. § 203

(i) and that is the only mention of good faith in Sect. 75." Even more significant and pertinent is the following language: "That Bartels in this case had no plan to present to his creditors except to offer to go to work personally on the farm with his grown son, and apply presently to his secured debt what he could raise by selling some mercantile property and vacant lots, hoping to pay all in full finally, does not require the dismissal of his proceedings."

■ The court, therefore, feels that there has been no failure to comply with the procedural requirements of Subsections a to r of Section 75, which can be effective to oust the court's present jurisdiction of the case under Subsection s.

In passing, it may be remarked that the conclusion just expressed is fortified by the circumstance that on the tender of the debtor's offer the moving creditor rejected it asserting, indeed, its inadequacy and questioning its good faith, fairness and certainty; but did not move to strike it as an utter failure to comply with the statute. To this thought, the answer may be suggested that a fatal jurisdictional infirmity may be asserted at any time. But the alleged defect now considered is not akin to that involved in Mulligan v. Federal Land Bank of Omaha, 8 Cir., 129 F.2d 438, in which the debtor was not a farmer and was, therefore, wholly beyond the possible operation of the act. Here it is asserted that jurisdiction, once validly acquired, of a farmer's estate has been lost by his failure to observe an intermediate requirement of the act.

■ Secondly, the moving creditor asserts that the debtor has failed to exercise good faith and fairness with respect to the moving creditor personally. Under that specification may be included: (a) The claim that the proposal of the debtor contemplated a certain favoritism in the payment of his creditors to the disadvantage of the secured creditor; (b) the failure to list all of his property in his schedules, by which the court understands that criticism is made of the debtor's failure to mention an outstanding oil lease upon and against his land; (c) the sale and exchange, by the debtor during the progress of this proceeding, of some of his personal property and crops to the probable ultimate disadvantage of the secured creditor.

It must be remembered that the court is now concerned with its jurisdiction, and with that alone. So far as item (a), supra, may be pertinent to this specification of a ground for dismissal, it may be considered as involved in the court's previous discussion. Items (b) and (c) have reference rather to administration than to jurisdiction. The court does not consider them to be adequate reasons yet for the dismissal of the proceeding. But it may be remarked respecting them that the overruling of the secured creditor's motion to dismiss is not to be construed as an approval by the court of a rather evident inclination on the part of the debtor to treat only the real property encumbered by the secured creditor's mortgage as involved in this action. All of his property, real and personal, is involved and subject only to his exemptions, must be accounted for. Its unexempt and unencumbered value is a fund charged with the payment of his debts including that of the moving secured creditor. And the court will entertain any timely and appropriate pleading designed to fasten its control more securely upon the debtor's assets. No issue thus made is properly before the court.

■ Finally, the creditor seeks dismissal of the proceeding because of the attempted inclusion within the effective operation of this action, of the entire title to the real estate which is the security for her mortgage debt. Her contention is based on the admitted fact, as found by the supervising conciliation commissioner, that originally, the debtor and one Charles W. Peek, his brother in law, owned that land in equal shares and together negotiated the creditor's loan upon it and signed the mortgage papers granting her lien on the farm; that after default on the loan and the prosecution by the creditor almost to completion of a foreclosure action, and in immediate apprehension of their loss of the land, Peek, who is not a farmer, conveyed his share in the precarious equity in the farm for a nominal consideration to the debtor, who, within two days thereafter, filed his initial petition in this case.

But that factual situation alone does not oust this court of jurisdiction. The debtor is and on filing his petition was, and theretofore had been a farmer, actually engaged in the tilling of the farm in question and land which he operates as a lessee. Even before the deed to him from Peek, he owned an undivided one-half interest in the quarter section thus conveyed, and also apparently owned another tract of forty acres of farm land on which he resided.

He was not made a farmer by any artifice issuing from the conveyance to him of the interest of Peek within the censure of In re Ripley, supra; In re Cole, supra, and In re Carter, supra. He is entitled to the declared benefits of Section 75 as a farmer. An issue which eventually may be presented to, but is not now before, the court is the extent, if any, to which this court acquired jurisdiction over the Peek-Bicknell quarter section. Several cases have discussed comparable or somewhat similar situations, one of the most recent being In re Williams, D.C., 46 F.Supp. 176. The court will not now consider or discuss that point, beyond repeating that whatever the effect of Peek's deed may have been, it can not be operative absolutely to bar the debtor from the right to relief in this court under Section 75 of the Bankruptcy Act.

The court, therefore, considers that the report and recommendation of the supervising conciliation commissioner are well taken both in fact and in law; that they should be adopted and confirmed; and that the moving creditor's motion to dismiss should be overruled. An order is being entered accordingly, with the due reservation of exceptions to the moving party.